**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **THE CADLE COMPANY** | § | |
| | § | |
| **v.** | § | **A-14-CV-758 LY** |
| | § | |
| **THOMAS G. KEYSER, et al.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are the Defendants' motions challenging venue of this case in the Austin

Division:

> (1)    Defendant Thomas g. Keyser's Motion to Transfer Venue Forum (Dkt. No. 14);
>
> (2)    Motion of Defendants Martin & Drought, et al. to Transfer Venue Pursuant to 28
>         U.S.C. § 1404(a) (Dkt. No. 18);
>
> (3)    Defendants' G. Wade Caldwell, et al.'s Motion to Transfer Venue Under 28 U.S.C.
>         § 1404(a) (Dkt. No. 20); and
>
> (4)    Defendant Jesse R. Castillo's Motion to Dismiss Plaintiff's Original Complaint
>         Pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a) (Dkt. No. 11).

The undersigned submits this Report and Recommendation to the District Judge pursuant to 28

U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the

Local Rules of the United States District Court for the Western District of Texas, Local Rules for

the Assignment of Duties to United States Magistrate Judges.

**I.  GENERAL BACKGROUND**

This is a legal malpractice suit filed by an Ohio real estate firm against a number of San

Antonio attorneys and law firms, based on allegedly negligent services provided by the attorneys

relating to litigation that took place in San Antonio. After a number of suits and appeals, all of which took place in San Antonio, the underlying litigation was finally closed in late 2013. On August 12, 2014, The Cadle Company filed this lawsuit in the Austin Division of this Court, seeking to recover damages from all defendants. In four separate motions, all Defendants request that the Court transfer the case to the San Antonio Division of this Court, alleging that venue in San Antonio is more convenient for the parties and witnesses, and that transfer would promote the interests of justice. The Cadle Company responds that venue in its chosen forum of Austin is proper, and that the Defendants have failed to demonstrate that transfer is warranted. Because it is overwhelmingly clear that venue in San Antonio is more convenient for the parties and witnesses, and because this case bears absolutely no connection to the Austin Division of this Court, the undersigned recommends that the case be transferred to the San Antonio Division of the Western District of Texas.

## II. ANALYSIS

Defendants move to transfer pursuant to 28 U.S.C. § 1404(a), contending that all of the facts giving rise to this lawsuit occurred in San Antonio, and that all defendants reside there.[1]

### A. Standard of Review

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28

---

[1] Defendant Castillo's motion seeks dismissal of the suit under § 1406(a) and Rule 12(b)(3), or alternatively, transfer pursuant to § 1406(a). Because venue in this Court is not improper, the dismissal motion is without merit. Rather, the only appropriate remedy to consider in this situation is transfer, not dismissal. *See Atlantic Marine Const. Co., Inc. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568, 577 (2013). Thus, it is **RECOMMENDED** that the Court **DENY** Defendant Jesse R. Castillo's Motion to Dismiss Plaintiff's Original Complaint Pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a) (Dkt. No. 11).

U.S.C. § 1404(a). Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "There can be no question but that the district courts have broad discretion in deciding whether to order a transfer" under § 1404(a). *In re Volkswagen of Am., Inc.* (*"Volkswagen II"*), 545 F.3d 304, 313–15 (5th Cir. 2008) (internal quotation marks omitted), *cert. denied*, 555 U.S. 1172 (2009).

As a preliminary matter, the "§ 1404(a) factors apply as much to transfers between divisions of the same district as to transfers from one district to another." *In re Radmax, Limited,* 720 F.3d 285, 288 (5th Cir. 2013). The starting point on a motion to transfer venue is determining whether the suit could have originally been filed in the destination venue. *Id.* at 312. If it could have, the focus shifts to whether the party requesting the transfer has demonstrated the "convenience of parties and witnesses" requires transfer of the action, considering various private and public interest factors. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1974).[2] Although these factors are "appropriate for

---

[2]The private interest factors are:
  (1)  the relative ease of access to sources of proof;
  (2)  the availability of compulsory process to secure the attendance of witnesses;
  (3)  the cost of attendance for willing witnesses; and
  (4)  all other practical problems that make trial of a case easy, expeditious and inexpensive.
The public interest factors are:
  (1)  the administrative difficulties flowing from court congestion;
  (2)  the local interest in having localized interests decided at home;
  (3)  the familiarity of the forum with the law that will govern the case; and
  (4)  the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)).

most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315. In fact they are not necessarily exhaustive or exclusive, the Fifth Circuit has said that none of them are of "dispositive weight." *Id.* Moreover, in reviewing the facts, a court should engage in a "flexible and individualized analysis," and not be too formalistic in deciding whether to transfer venue. *Stewart*, 487 U.S. at 29. Further, the movant need not show the *Gilbert* factors substantially outweigh the plaintiff's choice of venue—it is enough to show the new venue is clearly more convenient than the original one. *Volkswagen II*, 545 F.3d at 314. This does not mean that the plaintiff's choice of forum is to be ignored; the movant still has a "significant" burden of proof to "show good cause for the transfer." *Volkswagen II*, 545 F.3d at 314 n. 10. When the transferee venue is not "clearly more convenient" than the plaintiff's chosen venue, "the plaintiff's choice should be respected." *Id.* at 315.

However, the weight to give the plaintiff's choice of venue remains case-specific; the plaintiff's chosen venue is not entitled to weight regardless of where it is. "[W]hen a plaintiff is not a resident of the chosen forum, or the operative facts underlying the case did not occur in the chosen forum, the court will not give as much deference to a plaintiff's choice." *Apparel Prod. Servs. Inc. v. Transportes De Carga Fema, S.A.*, 546 F. Supp.2d 451, 453 (S.D. Tex. 2008). That lower deference is lessened even further when the transfer sought is between divisions of the same district. *In re Radmax*, 720 F.3d at 289 ("the traditional deference given to plaintiff's choice of forum . . . is less for intra-district transfers.") (quoting 17 J. Moore, et al., MOORE'S FED. PRAC. § 111.22[2], at 111-155 (3d. ed. 2013)).

**B.     Application**

No one disputes that this case "might have been brought" in San Antonio; one might even say that this case *should* have been brought there.  The analysis is therefore focused on the *Gilbert* factors.  As noted in the background section, this case has virtually no connection to Austin.  The parties' relationship started, fell apart, and ended in San Antonio.  The Cadle Company hired Martin & Drought—a San Antonio law firm—to assist it with the collection of a note in 1992.[3]  Cadle received a judgment in that matter in 1993, and filed it in Comal County to place a lien on property the debtor owned there. After largely fruitless collection efforts over the next decade, in 2003 Cadle initiated a garnishment action in Bexar County to gain access to a bank account of the debtor.  Cadle was represented by Keyser, to whom it was referred by Martin & Drought, because M&D had a potential conflict with the bank.  That garnishment action "went south," however, and ultimately the Bexar County judge dissolved the writ and ordered Cadle to pay the debtor $1000 in attorney's fees. The debtor also filed a separate, affirmative lawsuit against Cadle, alleging wrongful garnishment, breach of contract, and fraud.  At this point, Castillo took over the case, and attempted to get the dissolution order reversed.  While the appellate court—the San Antonio Court of Appeals—reversed the attorney's fees award, it affirmed the dissolution of the writ, finding that Cadle had "failed to prove a valid and subsisting judgment" to support the garnishment.  The debtor's lawsuit against Cadle then went to trial—in Bexar County.  The trial court in that case determined that Cadle was collaterally estopped from claiming its original judgment was unsatisfied and could support the garnishment, and thus, unsurprisingly, the jury found in the debtor's favor and ordered Cadle to pay him over $500,000 in damages and attorneys' fees.  Cadle then hired its current Dallas attorney, and

---

[3]All of the facts set forth here come from Cadle's Complaint (Dkt. No. 1).

he succeeded in getting the verdict reversed and the case remanded for a new trial. On the second day of trial that case settled. A year later Cadle filed this lawsuit.

The immediately preceding paragraph, which summarizes the totality of the circumstances that led to this filing of this case, is notable in one important respect—it does not contain a single reference to the City of Austin, or to any county within the Austin Division of this District. Instead, it contains frequent mentions of San Antonio and Bexar County, where all of the underlying litigation took place. Indeed, a review of the 60 pages of briefs, and many more pages of exhibits, on these motions reflects barely a mention of Austin. The only connection between Austin and this case that Cadle has identified relates to an IRS lien on an unimproved piece of land in Comal County,[4] which was owned by the debtor from the 1993 judgment. In 1997, the debtor had a buyer for the property, but had to satisfy both an IRS lien, and Cadle's judgment lien, before he could sell it. According to Cadle, the debtor negotiated a reduction in both liens to sell the property, and in doing so dealt with two different IRS employees on the IRS's lien, Lexie White and Bruce Wilpon. From the materials submitted with Cadle's response, at least as of 2009 and 2012, respectively, White and Wilpon were employed by the IRS in Austin. Cadle contends that both IRS employees' testimony will be needed in this malpractice case. But that is less than clear to the Court, as the issue on which they would testify—whether or not Cadle and its debtor agreed in 1997 that the monies Cadle received from the sale of the Comal County property fully satisfied Cadle's judgment—is at best a subsidiary issue in this legal malpractice case. Rather, this case will focus on the actions of the attorneys, beginning in 2003, and continuing until the last underlying lawsuit ended in 2013, and not on what happened in the 1997 land sale.

---

[4]Comal County is in the San Antonio Division of the Western District of Texas.

6

Application of the *Gilbert* factors is quite straightforward with these facts.  Starting with the private factors, the first is the relative ease of access to sources of proof.  *Volkswagen II*, 545 F.3d at 315.  Because all of the events or omissions giving rise to this lawsuit occurred in San Antonio, the relative ease of access to sources of proof is better in San Antonio than in Austin.  All of the attorneys who provided the allegedly deficient services are in San Antonio, and Cadle Company is in Ohio, so Austin is clearly inferior to San Antonio from the standpoint of access to the relevant evidence.  Similarly, the availability of compulsory process and cost of transportation for witnesses also weigh in favor of transfer.  Cadle is an Ohio company, and thus it will have to travel from out of state regardless of whether the case is tried here or in San Antonio.  All of the Defendants reside in San Antonio.  All of the important non-party witnesses that have been identified also reside in San Antonio.[5]  Finally, considering "all other practical problems that make trial of a case easy, expeditious and inexpensive," *see Volkswagen I*, 371 F.3d at 203, it is clear that San Antonio is a preferable forum.  All Defendants reside in San Antonio, and all of the conduct at issue in this case occurred in San Antonio.  On the other hand, there does not appear to be anything about trying the case in Austin that would make it easy, expeditious or inexpensive.  In sum, consideration of the private interest factors suggests that it would be more convenient for the parties and witnesses to place venue in the San Antonio Division.

The public interest factors also counsel in favor or transfer.  The Austin Division is one of the busiest divisions in the Western District of Texas, which itself is one of the busiest districts in the country.  In 2014, there were 1097 civil cases filed in Austin, and 1092 in San Antonio.  Austin

---

[5]The only possible exception would be the two IRS employees.  But as noted earlier, the Court does not view them as important to the malpractice issues which are the focus of this case. Further, they are well within subpoena range of the San Antonio Division.

has only two active district judges, while San Antonio has four.  These figures suggest that it would not be a prudent use of judicial resources for this Court to resolve a dispute that has no real connection with this forum.  In addition, the local interest factor clearly favors transfer.  Given that all of the events and omissions giving rise to this lawsuit occurred in the San Antonio Division, the citizens there have a direct interest in the allegations made against the lawyers there.  The last two public factors are not at issue in this case and thus are neutral.  After weighing all of the public factors, the Court finds they weigh in favor of a transfer of venue to the San Antonio Division.

In sum, the San Antonio Division of this District is a clearly more convenient forum for this case.  Indeed, it is a bit puzzling why Cadle filed the case here in the first place.  It has no connection to Austin that would make it more convenient for it to litigate here.  And, though it is not a factor a court takes into account on transfer motions, Cadle's attorney is located in Dallas, so that does not explain the choice either.  If the Court were to speculate about the reason behind Cadle's choice, it would guess that Cadle chose Austin because of the *inconvenience* it would cause the Defendants. While there may be a more innocent explanation, it is less than obvious what that is.

### III.  RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendant Thomas g. Keyser's Motion to Transfer Venue Forum (Dkt. No. 14); Motion of Defendants Martin & Drought, et al. to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 18); and Defendants' G. Wade Caldwell, et al.'s Motion to Transfer Venue Under 28 U.S.C. § 1404(a) (Dkt. No. 20), and **TRANSFER** this case to the San Antonio Division of the Western District of Texas.  **IT IS FURTHER RECOMMENDED** that to the extent Defendant Jesse R.

Castillo's Motion to Dismiss Plaintiff's Original Complaint (Dkt. No. 11) seeks dismissal of the case, that motion be **DENIED**.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 23rd day of February, 2015.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

9